## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN

MCKEON PRODUCTS, INC.

        Plaintiff,

  v.

SUREFIRE, LLC

        Defendant.

Case No. 2:22-cv-11771

Hon. Terrence G. Berg

Magistrate Judge Jonathan J.C. Grey

## MCKEON'S RESPONSE IN OPPOSITION TO
## SUREFIRE'S MOTION TO DISMISS

## **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................1

II.   STATEMENT OF FACTS ....................................................................2

      A.    Plaintiff McKeon and its MACK'S Trademarks ................................2

      B.    Defendant SureFire and its Infringing Products ...................................4

III.  LEGAL STANDARD ..........................................................................5

IV.   THE COMPLAINT ADEQUATELY ALLEGES THAT SUREFIRE
      USES "MAX" IN A "TRADEMARK WAY" ......................................6

      A.    SureFire's Arguments and Cases are Merits-Based and
            Inappropriate at the Pleadings Stage ......................................................9

      B.    SureFire's Descriptor Argument is a Factual Dispute
            Inappropriate for Resolution at the Pleadings Stage ...........................12

V.    MCKEON PLAUSIBLY ALLEGES A LIKELIHOOD OF
      CONFUSION ......................................................................................14

      A.    The Complaint Includes Numerous Facts Plausibly Alleging
            Likelihood of Confusion .......................................................................15

      B.    The Eight *Frisch* Factors Favor McKeon ...........................................18

            1.    The MACK's Mark is Strong ....................................................18

            2.    McKeon's MACK'S Mark and the Accused Marks are
                  Similar .......................................................................................22

            3.    Relatedness of the Goods and Services, Degree of
                  Customer Care, and Marketing Channels .................................23

            4.    The Remaining Factors are Neutral ..........................................23

VI.   MCKEON PLAUSIBLY ALLEGED TRADEMARK DILUTION ............24

VII.  CONCLUSION....................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*American Cyanamid Company v. S.C. Johnson & Son, Inc.*,
    729 F. Supp. 1018 (D.N.J. 1989)..........................................................................11

*Amerimax v. Re/Max*,
    No. 05-c-5300, 2007 WL 5570835 (N.D. Ill. Sept. 12, 2007) ....................10, 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................1, 16

*Audi AG v. D'Amato*,
    469 F.3d 534 (6th Cir. 2006) ..............................................................................24

*AutoZone, Inc. v. Tandy Corp.*,
    373 F.3d 786 (6th Cir. 2004) ......................................................................19, 22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2008)............................................................................................6

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*,
    109 F.3d 275 (6th Cir. 1997) ...................................................15, 18, 20, 21

*Directv, Inc. v. Treesh*,
    487 F.3d 471 (6th Cir. 2007) ..............................................................................6

*EST Inc. v. Royal-Grow Prods. Inc.*,
    526 F. Supp. 3d 943 (D. Kan. 2021)....................................................................11

*Express Welding, Inc. v. Superior Trailers, LLC*,
    700 F. Supp. 2d 789 (E.D. Mich. 2010) ............................................................19

*Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*,
    670 F.2d 642 (6th Cir. 1982) ............................................................................18

*GM v. Autel*,
    No. 14-cv-14864, 2016 WL 1223357 (E.D. Mich. Mar. 29, 2016)
    (Berg, J.)...............................................................................................................5

*Greenberg v. Life Ins. Co. of Virginia*,
   177 F.3d 507 (6th Cir. 1999) ........................................................................6, 13

*Grubbs v. Sheakley Group, Inc.*,
   807 F.3d 785 (6th Cir. 2015) ...............................................................................8

*Heinrich v. Waiting Angels Adoption Servs., Inc.*,
   668 F.3d 393 (6th Cir. 2012) ...............................................................................5

*Hensley Mfg. v. ProPride, Inc.*,
   579 F.3d 603 (6th Cir. 2009) .............................................................................17

*High Five Threads, Inc. v. Michigan Farm Bureau*,
   No. 1:20-cv-604, 2021 WL 1809835 (W.D. Mich. May 6, 2021) .........16, 17, 19

*Impulsaria, LLC v. United Dist. Grp.*,
   LLC, No. 11-cv-1220, 2012 WL 5178147 (W.D. Mich. Oct. 18,
   2012) ..................................................................................................................25

*Indus. Adhesive Co. v. Borden, Inc.*,
   218 U.S.P.Q. 945 (T.T.A.B. June 30, 1983)......................................................11

*Interactive Products Corp. v. a2z Mobile Off. Solutions*,
   326 F.3d 687 (6th Cir. 2003) .............................................................................14

*Jet, Inc. v. Sewage Aeration Sys.*,
   165 F.3d 419 (6th Cir. 1999) .............................................................................22

*Jones v. City of Cincinnati*,
   521 F.3d 555 (6th Cir. 2008) ...............................................................................6

*Kibler v. Hall*,
   843 F.3d 1068 (6th Cir. 2016) ...........................................................................23

*Kostrzewa v. City of Troy*,
   247 F.3d 633 (6th Cir. 2001) ...............................................................................6

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   543 U.S. 111 (2004)...........................................................................................11

*Little Caesar Enters., Inc. v. Pizza Caesar, Inc.*,
   834 F.2d 568 (6th Cir. 1987) .............................................................................23

*Luigino's, Inc. v. Stouffer Corp.*,
   170 F.3d 827 (8th Cir. 1999) ...............................................................22

*Max Rack, Inc. v. Core Health & Fitness, LLC*,
   40 F.4th 454(6th Cir. 2022) .................................................................12

*McKeon Prod., Inc. v. Honeywell Safety Prod. USA, Inc.*,
   No. 2020 WL 6937936 (E.D. Mich. Nov. 25, 2020), aff'd 15 F.4th
   736 (6th Cir. 2021).............................................................................21

*McKeon Prod., Inc. v. Howard S. Leight & Assocs., Inc.*,
   15 F.4th 736 (6th Cir. 2021) .............................................7, 14, 22, 23

*Passa v. City of Columbus*,
   123 F. App'x 694 (6th Cir. 2005) ........................................................6

*Prestonettes, Inc., v. Coty*,
   264 U.S. 359 (1924).............................................................................11

*Rhodes v. R & L Carriers, Inc.*,
   491 F. App'x 579 (6th Cir. 2012) ......................................................22

*Royal Baking Powder Co. v. Sherrell*,
   93 N.Y. 331 (1883) .............................................................................13

*Rupp v. Courier-J., Incorporated*,
   839 F. App'x 1003 (6th Cir. 2021) .............................................13, 14

*Sazerac Brands, LLC v. Peristyle, LLC*,
   892 F. 3d 853 (6th Cir. 2018) .........................................................7, 8

*Skinner Mfg. Co. v. General Foods Sales Co.*,
   52 F. Supp. 432 (D. Neb. 1943).........................................................11

*T. Marzetti Co. v. Roskam Baking Co.*,
   No. 2:09-cv-584, 2010 WL 793050 (S.D. Ohio Mar. 3, 2010) ...........7

*Tecumseh Prod. Co. v. Kulthorn Kirby Pub. Co. Ltd.*,
   No. 17-10249, 2017 WL 2951605 (E.D. Mich. July 10, 2017)...........9

*Volkswagen AG v. Dorling Kindersley Pub., Inc.*,
   614 F. Supp. 2d 793 (E.D. Mich. 2009) ..............................................7

*Wigs for Kids, Inc. v. Wigs 4 Kids of Michigan, Inc.*,
   No. 17-11471, 2017 WL 6539271 (E.D. Mich. Dec. 21, 2017)...................15, 18

*Wynn Oil Co. v. Thomas*,
   839 F.2d 1183 (6th Cir. 1988) ...........................................................................24

## <u>STATEMENT OF ISSUES PRESENTED</u>

Whether, at the pleadings stage, the Court should deny Defendant's motion to dismiss where the motion seeks resolution of disputed factual issues related to trademark infringement and dilution.

Plaintiff McKeon's Answer: Yes.

Defendant SureFire's Answer: No.

## **CONTROLLING / MOST APPROPRIATE AUTHORITY**

Pursuant to Local Rule 7.1(d)(2), McKeon hereby states that the following

cases are the controlling and most appropriate authorities for the relief sought:

**As to Section IV (Use of the Mark in a "Trademark Way"):**

1. *Sazerac Brands, LLC v. Peristyle, LLC*, 892 F. 3d 853, 856 (6th Cir. 2018)

2. *McKeon Prod., Inc. v. Howard S. Leight & Assocs., Inc.*, 15 F.4th 736, 739 (6th Cir. 2021)

3. *Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 794 (6th Cir. 2015)

4. *Tecumseh Prod. Co. v. Kulthorn Kirby Pub. Co. Ltd.*, No. 17-10249, 2017 WL 2951605, at *8 (E.D. Mich. July 10, 2017)

**As to Section V (Likelihood of Confusion):**

5. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 279 (6th Cir. 1997)

6. *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982)

7. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1188 (6th Cir. 1988)

**As to Section VI (Trademark Dilution):**

8. *Audi AG v. D'Amato*, 469 F.3d 534, 547 (6th Cir. 2006)

## I.    INTRODUCTION

Defendant SureFire's motion—purportedly a Rule 12(b)(6) motion—is actually a transparent attempt to obtain resolution on the ***merits***, not on the sufficiency of the pleadings. Not only is the motion procedurally improper and premature, it is substantively deficient. SureFire submitted voluminous evidence— totaling 20 exhibits— in its attempt to demonstrate that McKeon's Complaint was procedurally lacking.  But the fact that SureFire needed to submit such extensive evidence to support its motion demonstrates that the Complaint itself more than satisfies the applicable pleading standards.  SureFire's merits arguments and proffered evidence are improper at the Rule 12(b)(6) stage.  *E.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (when ruling on a Rule 12(b)(6) motion a court construes the complaint and determines whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (internal quotations omitted).

The first issue on which SureFire seeks a merits determination in its favor is whether it is using the MAX mark in a "non-trademark way."  In support of its argument, it improperly relies on numerous pieces of extrinsic evidence, and a number of cases resolving similar issues at the merits stage.  And in fact, in the key case SureFire relies upon—*Amerimax Real Estate Partners*—the court ***reversed*** its

decision granting a motion to dismiss, finding that it had inappropriately resolved a merits issue. This Court should not make the same mistake.

The same is true of SureFire's likelihood of confusion arguments. It relies on numerous exhibits and extrinsic evidence to argue that McKeon has not ***proven*** a likelihood of confusion in its Complaint. But of course that is not required. The Complaint details the strength and renown of the MACK'S mark and establishes why earplug purchasers are likely to be confused with SureFire's use of the phonetically identical MAX. Nothing more is required at this stage. Accordingly, SureFire's motion to dismiss should be denied.

## II.    STATEMENT OF FACTS

### A.    Plaintiff McKeon and its MACK'S Trademarks

McKeon is one of the nation's leading producers of earplugs for the retail consumer and medical markets. (ECF No. 1, ¶ 15.) Since the 1960's, McKeon has manufactured and distributed silicone earplugs under the trademarks "MACK'S" and "MACK'S PILLOW SOFT." (*Id.* ¶ 16.) For over 50 years, McKeon has invested significant amounts of time, resources, and money into developing a nationwide sales and distribution network for its MACK'S and MACK'S PILLOW SOFT earplugs. (*Id.* ¶ 17.) Each year McKeon expends an average of $1.8 million in the promotion, advertising, and marketing of its products sold under the MACK'S trademarks. (*Id.* ¶ 18.) Today, McKeon's MACK'S earplugs are sold in every state in the country as well as in several foreign countries. (*Id.* ¶ 19.) Additionally,

2

McKeon has had millions of dollars of sales of MACK'S earplugs since the 1990s, including upwards of $10 million dollars of sales of MACK'S earplugs nationally each year since 2015. (*Id.* ¶ 20.) Throughout its history, McKeon has marketed its MACK'S earplugs almost exclusively to consumers and the medical community through retail and online stores and its website. (*Id.* ¶ 21.)

Over the years, McKeon has had numerous articles and nationwide publications written about the success, growth, and quality of its MACK'S earplugs. (*Id.* ¶ 23.) As such, McKeon has developed substantial goodwill in its products and the MACK'S trademarks. (*Id.* ¶ 24.) As a direct result of the goodwill and McKeon's exceptional product acceptance by the public and medical professionals, consumers have come to identify McKeon's MACK'S earplugs as earplugs bearing distinctive qualities. (*Id.* ¶ 25.) Additionally, MACK'S earplugs have a significant loyal customer base. (*Id.* ¶ 26.)

McKeon owns the following trademarks comprised of its MACK's mark: 1) U.S. Trademark Registration No. 1,509,143 registered October 18, 1988, for the mark MACK's in connection with "earplugs" and "sleep masks" in Class 10 and 25, respectively; 2) U.S. Trademark Registration No. 1,503,125 registered September 6, 1988, for the mark MACK'S SHUT-EYE SHADE in connection with "sleep masks" in Class 25; 3) U.S. Trademark Registration No. 1,124,896 registered September 11, 1979, for the mark MACK'S PILLOW SOFT in connection with "earplugs" in Class

3

10; and 4) U.S. Trademark Registration No. 5,083,308 registered November 15, 2016, for the mark MACK'S AUDIBLES in connection with "[p]ersonal sound amplifiers not for musical instruments" in Class 09 (collectively "MACK'S® Trademarks). (*Id.* ¶¶ 27-29.)

### B.    Defendant SureFire and its Infringing Products

SureFire sells tactical technology and products including laser light systems for weapons, flashlights, helmet lights, suppressors, high-capacity magazines, batteries, and hearing protection. (ECF No. 1, ¶ 32.) It also sells earplugs having the following names: EP9 Sonic Defender's Cobalt Max, EP5 Sonic Defender's Max, and EP10 Sonic Defender's Ultra Max (together, the "Infringing Products"). (*Id.* ¶ 33.) SureFire owns U.S. Trademark Registration No. 3,171,584 for the mark SONIC DEFENDERS in connection with "earpieces for hearing protection" in Class 09; but does not own any trademarks containing the word MAX for earplugs or earpieces. (*Id.* ¶ 34-35.) SureFire sells its goods, including the Infringing Products, throughout the United States through its dealers, online retailers, and on SureFire's website. (*Id.* ¶ 36.)

Before filing this suit, McKeon sent cease-and-desist letters to SureFire, detailing how the Infringing Products violate McKeon's rights in the MACK'S trademarks. (*Id.* ¶¶ 37-42.) SureFire refused to stop selling its Infringing Products. (*Id.*) Despite being put on notice, SureFire and has adopted and continues to use

"MAX" in connection with its distribution, offer, and sale of the Infringing Products. (*Id.* ¶ 47.) SureFire markets the Infringing Products in the same marketing channels as McKeon, and the Infringing Products offered by SureFire directly compete with or are related to McKeon's goods. (*Id.* ¶¶ 48-49.)  SureFire is not associated with, connected to, or affiliated with McKeon. (*Id.* ¶ 56.)

As detailed in the Complaint, SureFire's use of "Max" in connection with its Infringing Products is likely to cause confusion among consumers and potential consumers as to the source or origin of SureFire's products and the sponsorship or endorsement of those goods by McKeon. (*Id.* ¶ 50.)  This is particularly true because of the phonetic similarity between Plaintiff's MACK'S mark and SureFire's use of MAX in connection with the Infringing Products.  (ECF No. 1-7, ¶ 37, PageID.35.)

## III.   LEGAL STANDARD

Under Rule 12(b)(6), a court "construes the complaint in the light most favorable to the plaintiff, accepts the [complaint's] factual allegations as true, and determines whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (citing *Iqbal*, 556 at 678.).  "When assessing whether a plaintiff has set forth a 'plausible' claim, the district court must accept all of the complaint's factual allegations as true."  *GM v. Autel*, No. 14-cv-14864, 2016 WL 1223357 (E.D. Mich. Mar. 29, 2016) (Berg, J.)

(citing *Ziegler v. IBP Hog Mrk., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001)). That is, courts do not resolve factual disputes on a Rule 12(b)(6) motion. *E.g.*, *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 519 (6th Cir. 1999). "[A] Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (internal citations omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2008).

Consistent with the principle that a Rule 12(b)(6) motion tests only the sufficiency of the complaint, courts are extremely limited in the evidence extrinsic to the complaint that can be considered. *E.g.*, *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001) ("The district court, in reviewing a motion to dismiss, may not consider matters beyond the complaint.") "Thus, in order to preserve a party's right to a fair hearing, a court, on a motion to dismiss, must only take judicial notice of facts **which are not subject to reasonable dispute**." *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005) (emphasis added). The court does not "abuse its discretion when it disregard[s] evidence that [] defendants file[] in support of their motion to dismiss." *Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008).

## IV. THE COMPLAINT ADEQUATELY ALLEGES THAT SUREFIRE USES "MAX" IN A "TRADEMARK WAY"

SureFire's primary argument is that it uses MAX in a "non-Trademark way." But this is a fact-intensive question inappropriate for resolution at the pleadings

stage.  Indeed, courts in this Circuit have denied motions for ***summary judgment*** on this very issue—much less 12(b)(6) motions—finding disputed factual issues.  *See, e.g.*, *Volkswagen AG v. Dorling Kindersley Pub., Inc.,* 614 F. Supp. 2d 793, 809 (E.D. Mich. 2009) (finding that "the question of whether [defendant] uses [plaintiff's] mark as a trademark in *Fun Cars **is one for the jury***") (emphasis added); *see also, e.g.*, *T. Marzetti Co. v. Roskam Baking Co.*, No. 2:09-cv-584, 2010 WL 793050, at *8 (S.D. Ohio Mar. 3, 2010) (denying summary judgment where "it can not be determined at [the summary judgment stage] whether [defendant] is using the term as a trademark or not").

Likewise, in the *Sazerac Brands* case relied upon by SureFire, the Sixth Circuit was considering an appeal of a ***summary judgment*** order.  *See Sazerac Brands, LLC v. Peristyle, LLC*, 892 F. 3d 853, 856 (6th Cir. 2018); *see also* ECF No. 8 at 14.  In that decision, the Court found, on the merits, that defendant's use of "Old Taylor" constituted fair use. *Id.* at 855. By contrast, this case is at the pleadings stage and SureFire has not even raised a fair use defense.  The Complaint alleges that SureFire is using the marks in a trademark way, and that because SureFire's use of "MAX" is phonetically identical to "MACK'S," consumers are likely to be confused.  (*See, e.g.*, ECF No. 1, at ¶¶ 37, 43, 47, 50, 55, PageID.35; *see also, e.g.*, *McKeon Prod., Inc. v. Howard S. Leight & Assocs., Inc.*, 15 F.4th 736, 739 (6th Cir. 2021) (noting that "MAX" and "MACK'S" are "phonetically identical").)

7

Moreover, the *Sazerac* Court made clear that its "threshold" "trademark use" test is essentially synonymous with the merits of a fair use defense:

> As Sazerac points out, our threshold test has drawn criticism. *Kelly–Brown v. Winfrey*, 717 F.3d 295, 305–08 (2d Cir. 2013); *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 168–70 (4th Cir. 2012). 'The Sixth Circuit's test,' in the words of the Second Circuit, 'would lead to the dismissal of [ ] claims without addressing what is beyond doubt the central question in considering consumer confusion: whether consumers were actually confused by the allegedly infringing product.' *Kelly–Brown*, 717 F.3d at 307. And the leading trademark treatise notes the Sixth Circuit's 'eccentric and peculiar view is erroneous because it finds no support either in the Lanham Act or in precedent.' 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:11.50 (5th ed. 2018).
>
> The critics may have a point, but they exaggerate the consequences of our approach. ***The trademark use test resembles in nearly every particular the fair use defense that we just applied.*** There is little daylight between the "non-trademark use" the Circuit test requires and the "descriptive use" that the statute requires. So it will often be the case that a claim that fails our threshold trademark use test will also be vulnerable to a fair use defense.

*Sazerac*, 892 F.3d at 859 (emphasis added).  Consistent with this explanation, the Sixth Circuit and district courts in this Circuit have routinely rejected arguments seeking dismissal at the pleadings stage for use of a mark in a "non-trademark way." *See, e.g.*, *Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 794 (6th Cir. 2015) ("[T]he court below erred in holding that the e-mail and flyer used the [] name in a non-

trademark way."); *Tecumseh Prod. Co. v. Kulthorn Kirby Pub. Co. Ltd.*, No. 17-10249, 2017 WL 2951605, at *8 (E.D. Mich. July 10, 2017).

The Complaint alleges that SureFire is using MAX in a trademark way. And SureFire admits that McKeon can "limit use of the phonetically equivalent word MAX *as a trademark*." (ECF No. 8, at 16.) This is precisely the scenario at issue in this case: SureFire is using the word MAX in a trademark way, and as McKeon has alleged, there is a significant likelihood of confusion based on the phonetic equivalency of MAX and MACK'S. (ECF No. 1, at ¶¶ 37, 43, 47, 50, 55, PageID.35.) The argument that McKeon is trying to "remove the *adjective* 'max' from the English language," is just hyperbole. (ECF No. 8, at 16.) SureFire is free to argue otherwise or to raise a fair use defense at summary judgment or trial, but it would be inappropriate to dismiss the Complaint at the pleadings stage. *Tecumseh Prod. Co.*, 2017 WL 2951605, at *9 (denying motion to dismiss because defendant did not show "that they engaged only in non-trademark use of the subject marks or that they are entitled to invoke the fair-use defense"). The motion should be denied.

### A.    SureFire's Arguments and Cases are Merits-Based and Inappropriate at the Pleadings Stage

SureFire cites a number of inapposite cases to argue that it—and apparently anyone and everyone—can use the term "MAX" in any manner and at any time, and that the use of MAX cannot constitute trademark infringement as a matter of law. (*See* ECF No. 8, at 17.) It block quotes a single district court decision from 2006

9

(*Amerimax Real Estate Partners*) as the sole support for its argument.  (*See id.*)  And in relying heavily on this decision, it correctly indicates that the decision was vacated, but **falsely** says it was "vacated on other grounds."  (*See id*.)  To the contrary: the district court in that case (correctly) noted that in holding the term "Max" as ubiquitous in both commerce and ordinary language, and granting the plaintiff declaratory judgment relief therefore, it had improperly entered summary judgment at the pleadings stage:

> In support of its request that the court reconsider its Declaratory Judgment Order, Re/Max asserts that the court's sua sponte Order was in effect a *de facto* entry of summary judgment, without having given Re/Max and its counsel the opportunity to present evidence or legal authority. After having carefully considered Re/Max's arguments, and relevant Seventh Circuit caselaw, **the court agrees.**
>
> \*       \*       \*
>
> Since the court failed to give notice to the parties that it was considering entering the Declaratory Judgment Order, and also failed to allow the parties to present evidence and law in support of their positions, the court's September 26, 2006 Declaratory Judgment Order is vacated. ***Those portions of the court's September 26, 2006 Opinion and Order that pertain to the Declaratory Judgment Order are also vacated.***

*Amerimax v. Re/Max*, No. 05-c-5300, 2007 WL 5570835, at \*1 (N.D. Ill. Sept. 12, 2007) (emphasis added).  And it should be no surprise this decision was vacated. Like Surefire's argument here, the decision was fundamentally flawed and based on

a lack of understanding of trademark law.  For example, in its lengthy citation of other uses of "Max" to support its position that MAX is not protectable in any context, it actually cited a number of protected (and famous) variations of the "MAX".  *Amerimax*, 2006 WL 2794934, at *4. SureFire asks this Court to make the same error that the Northern District of Illinois made: grant it summary judgment at the pleadings stage.  The Court should not do so.

Likewise, the other cases SureFire relies on were merits decisions inapplicable to the pleadings stage of this case. *See, e.g.*, *EST Inc. v. Royal-Grow Prods. Inc.*, 526 F. Supp. 3d 943 (D. Kan. 2021) (granting in part and denying in part motion for summary judgment); *Indus. Adhesive Co. v. Borden, Inc.*, 218 U.S.P.Q. 945 (T.T.A.B. June 30, 1983); *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004) (considering issues on appeal from grant of summary judgment); *Skinner Mfg. Co. v. General Foods Sales Co.*, 52 F. Supp. 432, 435, 446 (D. Neb. 1943) (decision after a trial with "thousands of pages [of pleadings] and testimony and an almost disconcerting number of exhibits"); *American Cyanamid Company v. S.C. Johnson & Son, Inc.*, 729 F. Supp. 1018, 1021-22 (D.N.J. 1989) (denying motion for preliminary injunction after considering the merits and finding a lack of likelihood of success on the merits); *Prestonettes, Inc., v. Coty*, 264 U.S. 359, 366-67 (1924) (considering an appeal from an order denying a preliminary injunction but placing a limited restriction on defendant).

11

Not only are the merits-stage cases that SureFire relies on inappropriate at the pleadings stage, but recent decisions from this Circuit contradict their key premise. For example, in *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 457(6th Cir. 2022), the Sixth Circuit considered a motion for judgment as a matter of law related to appellant's infringement of the "Max Racks" mark.   Although the specific issues considered by the Sixth Circuit were different, the decision undermines SureFire's argument that use of the word "Max" can never constitute trademark infringement.   *Id*. at 466 (noting that appellee's use "could have created [] likelihood of confusion").

Even the extrinsic evidence SureFire relies on undercuts its argument.  It cites numerous companies that use "MAX" in their *registered trademarks*, similar to what SureFire is doing here. (ECF No. 8, at 17 (noting registrations for TJ MAXX, OFFICEMAX, and STORAGE MAX marks).)  This further undermines SureFire's factual argument that MAX can never be used in an infringing trademark way.

McKeon sufficiently and plausibly alleges that SureFire uses "Max" in a trademark way, or such that the public would be deceived by the source of SureFire's Infringing Products. (ECF No. 1, at ¶¶ 37, 43, 47, 50, 55, PageID.35.) That is all that is required at this stage.  The motion should be denied.

### B.    SureFire's Descriptor Argument is a Factual Dispute Inappropriate for Resolution at the Pleadings Stage

SureFire relies upon factual evidence attached to its motion to support its argument that its use of "MAX" is merely descriptive and not source identifying. (ECF No. 8, at 18; Exs. 1-3.) This, however, is a fact-intensive question that can only be resolved after a factual record is developed. *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d at 519. But even considering the improper evidence in SureFire's motion, it is clear that SureFire's use of "MAX" is not merely as a descriptor. Indeed, its own evidence creates a fact question: while SureFire argues that the "MAX" version of its products has a 26 dB level of protection, ECF No. 8, at 18-19, that level of protection is not the "maximum" level of protection. The "ULTRA" and "ULTRA MAX" have 28 dB and 30 dB of protection, respectively. (*Id.*)

SureFire's cited cases do not help it. It relies on a case from 1883 where the court considered an appeal (following trial) concerning the use of the word "royal." *See Royal Baking Powder Co. v. Sherrell*, 93 N.Y. 331 (1883). But there, the court considered "the custom of the trade and the declaration of the manufacturers" to decide that the word "royal" was used "to denote the quality or grade of the goods." *Id.* at 336. Here, the factual question of "the custom of the trade" in the earplugs industry has clearly not been resolved, and as SureFire's own evidence shows, it is not using MAX to describe the "maximum" grade ear protection.

Likewise, in *Rupp v. Courier-J., Incorporated*, 839 F. App'x 1003 (6th Cir. 2021), the newspaper articles in question identified the sources of the pies and

13

macarons and there was no suggestion of an association between the appellant's pie recipe and appellee's pie because the recipes were different. *Id*. at 1007-1008.  And in *Interactive Products Corp. v. a2z Mobile Off. Solutions*, 326 F.3d 687 (6th Cir. 2003) the court rested its narrow holding, *after an appeal from a summary judgment order*, on the fact that "post-domain paths do not typically signify source."  *Id*. at 698. That holding does not apply here because there is no suggestion that a word like "MAX" does not typically signify source.

The only inquiry here is whether McKeon's Complaint sufficiently pleads facts to show that "MAX" can be source identifying. It has. Both SureFire and McKeon sell products in the same retail market, ECF No. 1, ¶¶ 48-49, and the marks are phonetically identical. *McKeon Prod., Inc.*, 15 F.4th at 739; ECF No. 1, ¶ 37, PageID.35. Any retail consumer who visits Amazon or Walmart and searches "max earplugs" will see SureFire's Infringing Products. (Ex. A.) If a customer is only familiar with "MACK'S" earplugs by name, it is possible that a customer—seeing the Infringing Products—will be confused by the source of the earplugs. Regardless, this is a question of fact that the parties should develop before the Court considers any decision on the merits.

## V.   MCKEON PLAUSIBLY ALLEGES A LIKELIHOOD OF CONFUSION

Like its argument that it is not using MAX in a trademark way, SureFire's likelihood of confusion arguments are merits-based arguments inappropriate at the

pleadings stage. The Sixth Circuit has repeatedly stated that the likelihood of confusion analysis is a mixed question of law and fact. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 279 (6th Cir. 1997). At the pleading stage, all facts embedded in that analysis are to be construed in McKeon's favor. As such, none of numerous exhibits SureFire relies upon to counter the facts alleged in McKeon's Complaint should be considered. (ECF No. 8 (Exs. 4-11).) McKeon's only burden at this stage is to sufficiently allege "a claim for trademark infringement," which it has done. *See, e.g.*, *Wigs for Kids, Inc. v. Wigs 4 Kids of Michigan, Inc.*, No. 17-11471, 2017 WL 6539271, at *9 (E.D. Mich. Dec. 21, 2017). The motion should be denied.

### A.   The Complaint Includes Numerous Facts Plausibly Alleging Likelihood of Confusion

McKeon's Complaint alleges numerous facts that plausibly allege a likelihood of confusion between McKeon's MACK'S mark and SureFire's use of MAX for its competing earplugs. These facts include, but are not limited to:

- SureFire sells earplugs having the following names: EP9 Sonic Defender's Cobalt Max, EP5 Sonic Defender's Max, and EP10 Sonic Defender's Ultra Max (ECF No. 1, ¶ 33);

- SureFire sells it Infringing Products throughout the U.S. and through its dealers, online retailers, and on SureFire's website (ECF No. 1, ¶ 36);

- SureFire markets the Infringing Products in the same marketing channels as McKeon, and the Infringing Products offered by SureFire directly compete with or are related to McKeon's goods (ECF No. 1, ¶¶ 48-49);

15

- SureFire is not associated with, connected to, or affiliated with McKeon (ECF No. 1, ¶ 56);

- "MAX" and "MACK'S" are phonetic equivalents (ECF No. 1, ¶ 37, PageID.35);

- SureFire's use of "Max" in connection with its Infringing Products is likely to cause confusion among consumers and potential consumers (ECF No. 1, ¶ 50);

- Since 1960, McKeon has sold earplugs under the "MACK'S" trademark and has invested significant resources on developing, promoting, advertising, and marketing its products all over the U.S. and in foreign countries (ECF No. 1, ¶¶ 16-20);

- McKeon has developed substantial goodwill in its MACK'S earplugs, and as such, has had exceptional product acceptance by the public– whereby consumers have come to identify MACK'S earplugs as earplugs having distinctive qualities. (ECF No. 1, ¶¶ 24-26, 63.)

These facts must be accepted as true at this stage of the case, *e.g.*, *Iqbal*, 556 U.S. at 678, and they plausibly allege a likelihood of consumer confusion between McKeon's MACK'S mark and SureFire's MAX marks.

None of the case cited by SureFire changes this analysis, and each involve distinctly different products not being sold by competitors, as here. For example, in *High Five Threads, Inc. v. Michigan Farm Bureau*, No. 1:20-cv-604, 2021 WL 1809835, at *5 (W.D. Mich. May 6, 2021), the court relied on numerous factors not applicable here in finding no likelihood of confusion: the parties were selling different products in two completely different markets (clothing/ novelty v. insurance and insurance services); the complaint did not "suggest much overlap in the marketing channels used by the parties"; and the marks at issue were two *design*

16

marks with "many…differences between" the designs; *Id*. at *5-6. Here, by contrast, the Complaint alleges that both SureFire and McKeon sell the same products— earplugs—in the same market, and the marks are phonetically identical. (ECF No. 1, ¶¶ 37, 48-49, PageID.35)  Clearly the likelihood of confusion is much higher on these facts than in a case where the plaintiff and defendant are selling clothing and insurance services, respectively.

Likewise, in *MJC Ventures LLC v. Detroit Trading Company*, it was "not alleged that the parties in this case are selling competing goods or services, or that Defendants' alleged use of the marks in commerce was likely to cause consumer confusion."  No. 19-cv-13707, 2020 WL 3542091, at *5 (E.D. Mich. June 30, 2020). Additionally, defendant's website (bearing the mark in question) clearly redirected customers to a different website—such that no consumer would be confused. *Id*. at *5-6.  The facts of this case are completely different.

Finally, *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) is simply inapplicable as it involved an issue not present here – i.e., the extent to which an individual's name can function as a trademark, and whether a successor company can use the founder's name when discussing the origins of its product.  It's a strained reading of that case to find any relevance here.

Finally, SureFire's claim that permitting McKeon to maintain its trademark infringement claim "would allow it to pursue not only SureFire, but any number of

the thousands of other manufactures across the retail spectrum" is not only irrelevant, it is speculative, exaggerated and wrong. (ECF No. 8, at 23.) McKeon is a Michigan-based, family-owned company simply concerned about protecting its trademark, and its claims against SureFire are narrowly targeted to competing products (earplugs) in the same marketing channels.   It has no desire or intention to monopolize the use of the word "Max." More importantly, this accusation is just another factual issue that cannot be resolved at the pleading stage.

### B.   The Eight *Frisch* Factors Favor McKeon

The Sixth Circuit considers eight factors (the "*Frisch* Factors") in considering whether there is a likelihood of confusion:   "1. strength of the plaintiff's mark; 2. relatedness of the goods; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. likely degree of purchaser care; 7. defendant's intent in selecting the mark; [and] 8. likelihood of expansion of the product lines." *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982). These are "fact-intensive factors." *Wigs for Kids, Inc.,* 2017 WL 6539271, at *8.  Taking the facts in the Complaint as true, these factors favor McKeon.

### 1.   The MACK's Mark is Strong

The first *Frisch* factor considers the strength of the protected mark, which "is a factual determination of the mark's distinctiveness." *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 280. "A mark is strong and distinctive when 'the public readily

accepts it as the hallmark of a particular source;' such acceptance can occur when the mark is unique, when it has received intensive advertisement, or both." *Id*. Here, the Complaint details the strength and distinctiveness of the MACK'S mark. (*See supra*; *see also* ECF No. 1, ¶¶ 15, 16, 17, 18, 20, 24, 25, 26, 63-64.)

As an initial matter, SureFire's arguments largely focus on the alleged strength or weakness of the "MAX" mark. But the critical focus for this first factor is the strength of ***plaintiff*'s** mark—here, MACK'S—not others' potential uses of the mark. *See, e.g.*, *Express Welding, Inc. v. Superior Trailers, LLC*, 700 F. Supp. 2d 789, 797 (E.D. Mich. 2010) ("This factor focuses on the distinctiveness of a mark and its recognition among the public.") (internal citations omitted). SureFire's arguments that MAX is not a strong mark are simply irrelevant.

But more importantly, the Court should reject SureFire's invitation to consider voluminous extrinsic evidence to resolve the "factual determination of the mark's distinctiveness" in its favor at the pleadings stage. *See AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 793 (6th Cir. 2004); *see also, e.g.*, *High Five Threads*, No. 1:20-cv-604, 2021 WL 1809835, at *5 ("The Court will not rely on [defendant's] evidence for purposes of the motion to dismiss.").

Even if the Court considers SureFire's extrinsic evidence—which it should not—that evidence does support SureFire's motion. For example, SureFire introduced records relating to the term MAX at the Trademark Office to support its

19

factual argument that Plaintiff's MACK'S mark is weak.  (*See* ECF No. 8 (Exs. 4-11).)  But this argument is so untethered to the narrow dispute at issue—specific products using specific marks—to have very little value.  The narrow question here is whether consumers of ***these*** earplugs are likely to be confused.

The Sixth Circuit has already recognized how little value such evidence and arguments have on the merits.  In *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, the Sixth Circuit rejected a defendant's attempt to rely on such evidence at the ***summary judgment*** stage, stating:

> [M]erely showing the existence of marks in the records of the Patent and Trademark Office will not materially affect the distinctiveness of another's mark which is actively used in commerce.  In order to be accorded weight a defendant must show what actually happens in the marketplace.

109 F.3d at 281 (reversing summary judgment in favor of defendant-infringer).  SureFire's reliance on such evidence at the pleadings stage is even less probative.

Likewise, SureFire's extrinsic evidence showing the use of "MAX" in international class 10 is similarly unconvincing. (*See* ECF No. 8.)  For one, that is not even the relevant market[1] for the products at issue in this case.  Instead, McKeon

---

[1] International class 10 provides protection for "[s]urgical, medical, dental and veterinary apparatus and instruments; artificial limbs, eyes and teeth; orthopaedic articles; suture materials; therapeutic and assistive devices adapted for persons with disabilities; massage apparatus; apparatus, devices and articles for nursing infants; sexual activity apparatus, devices and articles." (Ex. B.)

alleges that SureFire uses "MAX" in connection with earplugs in the same market channels as McKeon's "MACK'S" mark. (ECF No. 1, at ¶¶ 43, 48.)   At most, SureFire introduces fact disputes that cannot be resolved at this stage. *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 280.[2]

Nor has McKeon acquiesced to others' use of MAX in connection with earplugs.   To the contrary: McKeon has been vigilant in bringing enforcement actions, including against Honeywell—an action that was successful both at the district court and on appeal to the Sixth Circuit. *McKeon Prod., Inc. v. Honeywell Safety Prod. USA, Inc.*, No. 2020 WL 6937936, at *1 (E.D. Mich. Nov. 25, 2020), aff'd 15 F.4th 736 (6th Cir. 2021). As SureFire's exhibit shows, Honeywell did not use "MAX" as a "first name and one-word mark;" it used it in the same manner as SureFire. (*See* ECF No. 8, at Exhibit 13 (*Compare* SONIC "DEFENDERS® Cobalt Max" *with* "Howard Leight Max Lite Uncorded Earplug (LPF-1)").)   Far from showing acquiescence, the record shows that McKeon has been vigilant in promptly enforcing its trademark rights.  (ECF No. 1, ¶ 40, PageID.40.)

To the extent SureFire maintains that McKeon has not done enough to protect its mark, that issue must be resolved on the merits after full discovery.  McKeon was

---

2 SureFire's "intuition that 'Max' is used as a generic adjective" should not be given any credence. "Intuition" is not sufficient for this Court to rely on at ***any*** stage of the proceedings. (ECF No. 8, at 25.)

under no obligation to include every fact supporting its claims in its Complaint. *See, e.g.*, *Rhodes v. R & L Carriers, Inc.*, 491 F. App'x 579, 582-84 (6th Cir. 2012) (stating that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need ***detailed*** factual allegations," and holding that the district court "erred in demanding such detailed factual content to survive a motion to dismiss" ) (citing *Twombly*, 550 U.S. at 555) (emphasis added) (internal citations omitted). The Complaint includes numerous facts detailing the strength of the MACK'S mark, and SureFire's extrinsic evidence does not show otherwise. This factor weighs in favor of McKeon.

### 2.  McKeon's MACK'S Mark and the Accused Marks are Similar

The Sixth Circuit has already recognized that "MAX" and "MACK'S" are "phonetically identical." *McKeon Prod., Inc.* 15 F.4th at 739 (6th Cir. 2021). The same is true in this case, and clearly undercuts SureFire's argument that the marks are dissimilar. This *Frisch* factor favors McKeon.

This is particularly true since the case is at the pleadings stage. SureFire does not cite a ***single*** case finding dissimilarity of the marks at the ***pleadings*** stage; instead, every case it relies on follows from summary judgment or trial decisions. *See, e.g.*, *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786 (6th Cir. 2004) (appeal of summary judgment ruling); *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827 (8th Cir. 1999) (same); *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419 (6th Cir. 1999) (same);

*Kibler v. Hall*, 843 F.3d 1068 (6th Cir. 2016) (same); *Little Caesar Enters., Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568 (6th Cir. 1987) (appeal of a trial ruling). Even if this Court were considering the marks' similarity at summary judgment—which it is not—the facts would actually favor ***McKeon***, particularly in light of the Sixth Circuit's statement above.  This factor favors McKeon.

### 3. Relatedness of the Goods and Services, Degree of Customer Care, and Marketing Channels

All three of these *Frisch* factors favor McKeon. The Complaint alleges that both McKeon and SureFire sell the same products—earplugs—that directly compete through the *same* marketing channels (*i.e.*, online retailers). (ECF No. 1, at 15, 16, 33, 36, 47, 48, 49.) SureFire responds by injecting facts into the record regarding its products and marketing channels.  Regardless of the merits of SureFire's arguments, there couldn't be a more obvious factual issue to be addressed during discovery.

### 4. The Remaining Factors are Subject to Discovery

The remaining three factors—evidence of actual confusion, defendant's intent in selecting the mark, and likelihood of expansion of the product lines—cannot be addressed at the pleading stage, other than product line expansion because the parties already sell the same products: earplugs. SureFire's intent in selecting the mark is not an issue that can be adequately addressed at this point because McKeon has not yet been afforded the opportunity for discovery.  Regarding evidence of actual confusion, as SureFire admits, such a showing "is not necessary." (ECF No. 8, at

31); *see Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1188 (6th Cir. 1988) (internal citations omitted). Moreover, actual confusion is often established via a survey of relevant consumers.

*   *   *

The eight *Frisch* factors favor McKeon, particularly at the pleadings stage of the case. The motion should be denied.

## VI.   MCKEON PLAUSIBLY ALLEGED TRADEMARK DILUTION

"Dilution law, unlike traditional trademark infringement law . . . is not based on a likelihood of confusion standard, but only exists to protect the quasi-property rights a holder has in maintaining the integrity and distinctiveness of his mark." *Audi AG v. D'Amato*, 469 F.3d 534, 547 (6th Cir. 2006) (internal quotations omitted). A party will prevail on a dilution claim if (1) its distinctive mark is famous, (2) defendant's use of the mark was in commerce, (3) defendant's use began after plaintiff's mark became famous, and (4) defendant's use causes dilution of the distinctive quality of plaintiff's mark. *Id*.

The Complaint pleads sufficient facts to support McKeon's dilution claim. It alleges that McKeon is one of the nation's leading producers of earplugs and has distributed earplugs under the MACK'S trademark since the 1960's. (ECF No. 1, at ¶¶ 15-17.) It also alleges that MACK'S earplugs are sold in every state and that McKeon has developed substantial goodwill in the "MACK'S" trademark.  (*Id*. at

¶¶ 19, 24; *see also Id.* ¶¶ 18, 20, 22, 23.) As such, the MACK'S earplugs bear distinctive qualities and are famous. (*Id.* at ¶¶ 25, 63.) Further, SureFire began use of its phonetically identical mark in commerce after McKeon's mark became famous, such that dilution has occurred. (*Id.* at ¶¶ 47, 50, 64.)  That is all that is required at this stage of the case.  *See, e.g., Impulsaria, LLC v. United Dist. Grp.*, LLC, No. 11-cv-1220, 2012 WL 5178147, at *7 (W.D. Mich. Oct. 18, 2012) (denying motion to dismiss because "[o]n a Rule 12(b)(6) motion, [] the Court is not concerned with Plaintiff's likelihood of success").

## VII.   CONCLUSION

The Court should deny SureFire's Motion to Dismiss in its entirety.

Dated: October 24, 2022                    Respectfully submitted,

HONIGMAN LLP

By: /s/ J. Michael Huget
J. Michael Huget (P39150)
Sarah E. Waidelich (P80225)
Latifa H. Dabaja (P84461)
HONIGMAN LLP
315 E. Eisenhower Parkway, Suite 100
Ann Arbor, MI 48108-3330
(734) 418-4200
mhuget@honigman.com
swaidelich@honigman.com
ldabaja@honigman.com

*Counsel for Plaintiff McKeon Products Inc*

25

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on October 24, 2022, a copy of the foregoing was electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record.

<u>/s/J. Michael Huget</u>
J. Michael Huget (P39150)