UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MCKEON PRODUCTS, INC.,** | **2:22-CV-11771-TGB-JJCG** |
| Plaintiff, | |
| vs. | **ORDER GRANTING** |
| **SUREFIRE, LLC,** | **DEFENDANT'S MOTION TO** |
| | **DISMISS** |
| Defendant. | **(ECF NO. 8)** |

McKeon Products, Inc., the producer of MACK'S® earplugs, has filed a trademark-infringement lawsuit against SureFire, LLC over its use of the word "Max" in connection with its line of Sonic Defenders® hearing protection products. The matter is now before the Court on SureFire's Motion to Dismiss. ECF No. 8. For the reasons below, the motion will be **GRANTED** and this case will be **DISMISSED**.

## I.    FACTUAL BACKGROUND

McKeon Products, Inc. is a Michigan corporation that manufactures earplugs. ECF No. 1, ¶¶ 2, 10. Since the 1960s, it has produced and sold silicone earplugs under the trademarks "MACK'S" and "MACK'S PILLOW SOFT," both nationally and internationally. ¶¶ 16, 19. Numerous articles have been written about the quality and success of these earplugs and, according to the complaint, a substantial and loyal consumer base has come to associate products bearing the "MACK'S" mark as having distinctive qualities. ¶¶ 23-26. McKeon registered the

"MACK'S" mark in the 1988 and claims first use in commerce as early as 1968. ¶ 29. It has additionally registered "MACK'S SHUT-EYE SHADE," "MACK'S PILLOW SOFT," and "MACK'S AUDIBLES." ¶ 29. As MACK'S® earplugs have generated McKeon considerable revenue, it is very protective of the mark. ECF No. 1-7.

Enter SureFire, LLC, a California limited liability company that specializes in tactical technology. ECF No. 1. ¶¶ 11, 32. Among other items, like laser light systems for weapons, flashlights, helmet lights, suppressors, high-capacity magazines, and batteries, SureFire also sells hearing protection products. ¶ 32. At issue here are three items in its line of Sonic Defenders® earplugs: (1) the EP9 Sonic Defenders® Cobalt Max, (2) the EP5 Sonic Defenders® Max, and (3) the EP10 Sonic Defenders® Ultra Max. ¶ 33. It owns a trademark registration for the SONIC DEFENDERS mark and claims first use in 2005. ¶ 34.

McKeon worries that, because "MACK'S" and "Max" are phonetic equivalents, SureFire's use of the word "Max" in connection with the sale of its Sonic Defenders® earplugs is likely to cause customer confusion and dilute the strength of its mark. ¶¶ 37, 43. In February 2022, it sent a cease-and-desist letter to SureFire telling it as much. ECF No. 1-7. When SureFire responded that it was using the word "Max" merely in a descriptive way and that the likelihood of any confusion was nonexistent, ECF No. 1-8, PageID.38, McKeon filed this lawsuit.

2

McKeon's complaint raises five claims: (1) federal trademark infringement, 15 U.S.C. § 1114; (2) unfair competition and false designation of origin, 15 U.S.C. § 1125(a); (3) federal trademark dilution, 15 U.S.C. § 1125(c); (4) unfair trade practices under MCL § 445.901 et seq. and Michigan common law; and (5) violation of Michigan's Consumer Protection Act, MCL § 445.903.

SureFire has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 8.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A Rule 12(b)(6) motion tests whether a complaint has satisfied that requirement. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007)).

In evaluating whether a plaintiff has set forth a plausible claim, the Court accepts as true all well-pleaded factual allegations. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2011). "[M]ere conclusions," however, "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. 664. And "[t]hreadbare recitals of the elements of a cause of action," devoid of further factual enhancement, will not do. *Id.* at 678.

3

## III.  DISCUSSION

SureFire argues that the complaint must be dismissed because McKeon has failed to meet the threshold requirement of Sixth Circuit law to plausibly allege that SureFire is using "Max" "in a trademark way." ECF No. 8, PageID.65-71. It maintains that its use of the word is purely descriptive, not a source identifier.[1] Additionally, SureFire contends that the allegations fail to plausibly allege that its use of the word "Max" is likely to cause consumer confusion with the "MACK'S" mark. *Id.* at PageID.72-82. Having reviewed the complaint and the materials attached to it, the Court agrees. It is implausible based on the complaint and attached materials that SureFire's use of the word "Max" could cause confusion over the source of Sonic Defenders® earplugs.

The Lanham Act defines a "trademark" as "any word, name, symbol or device … used by a person … to identify and distinguish his or her goods … from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127. A plaintiff can state a federal trademark-infringement claim if she is able to plausibly allege that: (1) she owns the registered trademark; (2) the defendant used the mark in

---

[1] Surefire notes that it also sells other models of Sonic Defenders® in addition to the EP9 Sonic Defenders® Cobalt Max, the EP5 Sonic Defenders® Max, and the EP10 Sonic Defenders® Ultra Max products which McKeon challenges. These other products include EP3 Sonic Defenders®, for example, as well as EP4 Sonic Defenders® Plus and EP7 Sonic Defenders® Ultra. These are facts outside the complaint.

4

commerce; and (3) the use is likely to cause confusion or mistake. *See id.* § 1114. At issue here is the third requirement: the likelihood of confusion.

"The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). Put another way, "the ultimate question is whether relevant consumers are likely to believe that the products … offered by the parties are affiliated in some way." *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1116 (6th Cir. 1996) (internal quotations and alterations omitted).

Likelihood of confusion is generally evaluated using an eight-factor analysis, during which the Court considers: "(1) the strength of the senior mark; (2) the relatedness of the goods or services; (3) the similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines." *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 280.

But in this Circuit, there is a preliminary question the Court must consider first: are defendants using the challenged mark in a way that identifies the source of their goods? *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 610 (6th Cir. 2009). "If they are not, then the mark is being used in a 'non-trademark' way and trademark infringement laws, along

with the eight-factor analysis, do not even apply." *Id.* (internal quotations omitted). After a careful review of the complaint, the Court's answer to this threshold question is "no."

McKeon contends that whether SureFire is using "Max" in a trademark way is a "fact-intensive question inappropriate for resolution" in a 12(b)(6) motion. ECF No. 12, PageID.231-32. It asserts that because "Max" is phonetically identical to "MACK'S" and that parties operate in the same market, an inference that SureFire's use of the word "Max" could confuse consumers is plausible. *Id.* at PageID.232. It further protests that SureFire's reliance on exhibits attached to its motion— which, among other things, show other products in the Sonic Defenders® line, ECF No. 8-3—is procedurally improper. *Id.* at PageID.234-39. According to McKeon, SureFire is trying to dupe the Court into prematurely adjudicating the affirmative defense of fair use based on facts outside the complaint. *See, e.g.*, *id.* at PageID.238.

McKeon is correct that, in evaluating a complaint at the motion-to-dismiss stage, the Court's review is generally limited to the allegations in the complaint. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) ("If the district court considers evidence outside the complaint, it effectively converts the motion to dismiss to a motion for summary judgment."). McKeon is also correct that likelihood of confusion is generally a fact question that is inappropriate to resolve at the motion-

to-dismiss stage, and that the fair-use defense typically also implicates fact questions. *See Hensley Mfg.*, 579 F.3d at 613.

But these well-established principles do not salvage McKeon's complaint. In *Hensley*, the Sixth Circuit instructed that "there is no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of law." *Id.*; *see also Oaklawn Jockey Club, Inc. v. Ky. Downs, LLC*, 687 F. App'x 429, 432 (6th Cir. 2017) (noting that, while likelihood of confusion usually is a fact question, *Hensley* "affirmed the dismissal of the suit because although the defendant's advertising materials used the plaintiff's trademark, the defendant did not use the trademark to identify the source of its products or to suggest an association between the defendant and the plaintiff").

Here, the Court need not go beyond the materials McKeon has attached to its own complaint to determine that SureFire is not using the word "Max" in a trademark way—that is, in a way that identifies the source of its products. Among other items, McKeon included a review of MACK'S® earplugs from NBC News's website containing photos of the "MACK'S" mark on product packaging. ECF No. 1-2, PageID.21-22. "MACK'S" appears conspicuously printed in large, white font that appears at an angle on the packages.

7





McKeon also attached the letter it sent to SureFire in February 2022, in which it included photos of EP9 Sonic Defenders® Cobalt Max and EP10 Sonic Defenders® Ultra Max web listings. ECF No. 1-7, PageID.34-35. The Sonic Defenders marks and the "Max" descriptors that follow them are in a black font that appears in a straight line bearing no semblance at all to the "MACK'S" mark.







Context matters. When considered in their entirety, the listings make plain that their focus is the product trademark "Sonic Defenders"— *not,* as McKeon urges—the word "Max." Sonic Defenders is visually and textually the source of the earplugs. "Max," like the words "Cobalt" and

8

"Ultra," is unmistakably being used as a modifier, describing the strength of the products—not their source. *See Sazerac Brands, LLC v. Peristyle, LLC*, No. 15-00076, 2017 WL 4558022, at *5 (E.D. Ky. July 14, 2017), *aff'd*, 892 F.3d 853 (6th Cir. 2018) ("[A] party does not violate trademark law solely by using words another entity has trademarked."); *see also Rupp v. Courier Journal, Inc.*, No. 18-00277, 2020 WL 1310491, at *4 (W.D. Ky. Mar. 19, 2020), *aff'd*, 839 F. App'x 1003 (6th Cir. 2021) ("[T]he headline, 'Bourbon makes this Derby pie a state original,' uses 'Derby' to modify 'pie,' not to identify the source of the product as DERBY-PIE®. This is analogous to using 'Derby' to modify 'horse,' 'hat,' or 'party.'") It does not stand alone. Ultimately, the images show that McKeon cannot plausibly allege there is a risk that a consumer could think that EP9 Sonic Defenders® Cobalt Max, EP5 Sonic Defenders® Max, and EP10 Sonic Defenders® Ultra Max earplugs are affiliated in any way with MACK'S® earplugs—despite the phonetic equivalence of "MACK'S" and "Max." Because SureFire uses "Max" in a non-trademark way, McKeon cannot plausibly allege a violation of federal trademark infringement under Sixth Circuit law.

McKeon resists this conclusion by arguing that the Sixth Circuit's decision in *Hensley* is distinguishable because that case involved the trademark of a person's name. ECF No. 12, PageID.242. But nothing in *Hensley* suggests that its reasoning is so limited. Indeed, multiple courts in the circuit have followed its analysis to dismiss trademark-

infringement claims that did not involve a person's name under Rule 12(b)(6). *See, e.g.*, *Kassa v. Detroit Metro Convention & Visitors Bureau*, 150 F. Supp. 3d 831, 838-39 (E.D. Mich. Dec. 7, 2015) (Leitman, J.) ("Welcome to the D" slogan); *Dow Corning Corp. v. Jie Xiao*, No. 11-10008, 2011 WL 2015517, at *7-*9 (E.D. Mich. May 20, 2011) ("Dow Corning" mark). The Sixth Circuit has affirmed this reasoning. *See, e.g.*, *Rupp*, 839 F. App'x at 1009 ("Derby" modifer); *Oaklawn Jockey Club, Inc.*, 687 F. App'x at 432 (names of racing tracks).

McKeon notes that it has achieved some measure of success in this district and at the Sixth Circuit with similar allegations of trademark infringement and takes umbrage at a suggestion by SureFire that it has acquiesced to the use of its mark in other instances. In particular, McKeon points to the Sixth Circuit's opinion in *McKeon Products, Inc. v. Howard S. Leight & Associates, Inc.*, 15 F.4th 736 (6th Cir. 2021), which concerned a lawsuit it filed over the use of the words "Max" and "Max Lite" in connection with Howard Leight® earplugs. ECF No. 12, PageID.246. Because SureFire uses the word "Max" in a similar manner, McKeon implies, it necessarily must succeed here.

But reliance on the *Leight* case does not help McKeon. *Leight* involved a consent judgment: the parties entered into a court-approved consent decree, in which Leight agreed not to sell "Max" earplugs on the "retail" market in exchange for McKeon's concession that it would not challenge Leight's sales in the "industrial" market. 15 F.4th at 739. The

judgment from that case is an agreement between the parties, not a statement of law. The Sixth Circuit became involved only when McKeon moved to enforce the judgment after discovering Leight's earplugs on Amazon, which McKeon asserted was a "retail" market. *Id.* at 740-41. The court in *Leight* therefore had no occasion to pass on whether the words "Max" and "Max Lite" were being used in a trademark way.

Moreover, SureFire's use of the word "Max" is distinguishable from the usage at issue in *Leight*. As the opening lines of the Sixth Circuit's decision explain: "McKeon used the brand name 'MACK'S,' and Leight used the brand names 'MAX' and 'MAX LITE.' The potential for confusion is obvious." *Id.* at 739. Not so here. As demonstrated by the evidence McKeon attached to its own complaint, there is no similar "potential for confusion" between the brand name MACK'S® and the brand name Sonic Defenders®; it is not plausible that a reasonable consumer purchasing, say, EP5 Sonic Defenders® Max earplugs would think those earplugs were sourced from,  approved by, or affiliated in any way with the same company that produces MACK'S® earplugs.

McKeon protests that the "trademark use" inquiry is "essentially synonymous with the merits of a fair use defense." ECF No. 12, PageID.233. The Sixth Circuit has acknowledged that the test has garnered such criticism. *See Sazerac Brands, LLC*, 892 F.3d at 859 (noting that a "leading trademark treatise notes the Sixth Circuit's eccentric and peculiar view is erroneous because it finds no support either

11

in the Lanham Act or in precedent" (internal quotations omitted)). Nonetheless, as it recently pointed out in affirming dismissal of a complaint on a Rule 12(b)(6) motion, it remains the law in this Circuit for now. *Rupp*, 839 F. App'x at 1009.

McKeon has also asserted a claim for unfair competition under 15 U.S.C. § 1125(a). Because success on an unfair competition claim requires a showing that an alleged infringer's actions create a likelihood of confusion, the Court's conclusions as to the trademark infringement claim under § 1114 dispose of this claim—as well as of McKeon's claims for Michigan unfair competition and violation of the Michigan Consumer Protection Act. *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 521 (6th Cir. 2007); *Kassa*, 150 F. Supp. 3d at 841.

That leaves McKeon's claim for federal trademark dilution. Here too, this claim fails as a matter of law. To state a claim for federal trademark dilution, a plaintiff must plead facts sufficient to show that: (1) the mark is "famous;" (2) the mark is distinctive; (3) the defendant used the mark "in commerce;" (4) the defendant used the mark after the mark became famous; and (5) the defendant's use "cause[d] dilution of the distinctive quality of the ... mark." *Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616, 628 (6th Cir. 2003).

Critically, when a defendant uses a mark in a non-trademark way, the plaintiff cannot maintain a federal trademark dilution claim. *Kassa*, 150 F. Supp. 3d at 841. As relevant here, the text of the statute provides:

The following shall not be actionable as dilution by blurring or dilution by tarnishment under this subsection:

> (A) *Any fair use, including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person other than as a designation of source for the person's own goods or services.*

15 U.S.C. § 1125(c)(3) (emphasis added). As the Court has concluded that SureFire uses "Max" in connection with the accused products in a non-trademark way, the trademark-dilution must also be dismissed.

## IV.   CONCLUSION

As SureFire agrees, McKeon can, under certain circumstances, limit use of the phonetically equivalent word "Max." But it cannot do so when the word is used only in a non-trademark way. For the reasons explained above, McKeon has failed to state a plausible claim against SureFire. Accordingly, **IT IS ORDERED** that SureFire's Motion to Dismiss (ECF No. 8) is **GRANTED**, and McKeon's complaint (ECF No. 1) is **DISMISSED** in its entirety **WITH PREJUDICE**.

**SO ORDERED** this 29th day of September, 2023.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge